IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| JONATHAN D. BAILEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 17-0937-CV-W-BP |
| | ) | |
| MICHAEL BARRETT, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER AND OPINION GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

Plaintiff filed this suit in state court, alleging that (1) his rights under the United States and Missouri Constitutions were violated when his employment was terminated because of statements that he made on matters of public concern, and (2) he is entitled to the return of personal property that was in his office. Defendants removed the case to federal court, and then filed a Motion to Dismiss. As discussed below, the Court concludes that Plaintiff has not stated a legally viable claim based on the Missouri Constitution, so the Motion to Dismiss, (Doc. 10), is granted to that extent. Defendants' motion is denied in all other respects.

### I. BACKGROUND

According to the Petition filed in state court (which the Court hereafter refers to as the Complaint), Plaintiff was a trial attorney for the Missouri State Public Defender System, ("MSPD"). He worked for District 16, which covers Jackson County, from February 26, 2013 until he was fired on June 28, 2017. (Doc. 1-1, pp. 17-18, ¶¶ 3, 13.)[1] At the time of Plaintiff's termination, Defendant Michael Barrett was the Director of MSPD, and Defendant Ellen Blau was the Trial Division Director for MSPD; their offices were in Columbia and St. Louis,

---

[1] All page numbers are those generated by the Court's CM/ECF system.

respectively. (Doc. 1-1, p. 17, ¶ 4.) Both Defendants "were responsible for employment decisions within the Trial Division." (Doc. 1-1, p. 18, ¶ 9.)

On approximately June 26, 2017, Plaintiff learned that Barret "had received an award for being the most outstanding Public Defender. In response, [Plaintiff] posted the following on Facebook.

> What a joke. The outstanding public defender of the year is our director. . . . I'm still waiting for ANY CHANGE TO ACTUALLY BE INITIATED BY THE SYSTEM INSTEAD OF RIDICULOUS GO NOWHERE PUBLICITY STUNTS!! Here's an idea – give an award to an actual attorney that fights for clients, instead of glad handing and going no where [sic] in Jeff City and not having balls to decline cases, go to non-vertical representation, or a million other practical things that would actually help our system."

(Doc. 1-1, p. 19, ¶ 14 (capitalization in original).)

The next day, Plaintiff met with Leon Munday, the Deputy Trial Division Director, and Joseph Meggerman, the Assistant District Defender for District 16. During the meeting Plaintiff discussed his concerns about MSPD policies and practices and proposed reforms. The Complaint's description of this meeting does not indicate that there was any disruption, disharmony, or other effect from Plaintiff's Facebook post. (Doc. 1-1, pp. 19-20, ¶¶ 15-16.) The day after Plaintiff's meeting with Munday and Meggerman, both Defendants "travelled to the Kansas City trial office, where [Plaintiff] was working," and Blau met with Plaintiff. (Doc. 1-1, p. 16, ¶ 18.) "Blau told [Plaintiff] his employment was terminated as a result of his speech, calling it 'insubordination.'" (Doc. 1-1, p. 16, ¶ 18.)

The Complaint contains two counts. Count I alleges that Plaintiff's termination violated his rights under "the First and Fourteenth Amendments of the United States Constitution and similar provisions in the Constitution of Missouri." (Doc. 1-1, p. 24, ¶ 28.) Count II seeks the return of "personal, professional-related material on the MSPD computer system," including

2

"form pleadings, motions, research, resumes, and CLE presentation material." (Doc. 1-1, p. 10, ¶ 33.) Defendants contend that all of the claims should be dismissed for failure to state a claim, and the claim under the United States Constitution should also be dismissed based on qualified immunity. Plaintiff has not addressed Defendants' arguments about the Missouri Constitution, but opposes dismissal of his other claims. The Court resolves these issues below.

## II. DISCUSSION

When considering a motion to dismiss under Rule 12(b)(6), the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiff[ ]." *Stodghill v. Wellston School Dist.*, 512 F.3d 472, 476 (8th Cir. 2008).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citations omitted). A claim is facially plausible if it allows the reasonable inference that the defendant is liable for the conduct alleged. *E.g., Horras v. American Capital Strategies, Ltd.*, 729 F.3d 798, 801 (8th Cir. 2013).

Dismissal based on an affirmative defense – such as qualified immunity – is permissible if the Complaint establishes that the defense exists. *E.g., C.H. Robinson Worldwide, Inc. v. Lobrano,* 695 F.3d 758, 763-64 (8th Cir. 2012). "Qualified immunity involves the following two-step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Mitchell v. Shearrer*, 729 F.3d 1070, 1074 (8th Cir. 2013).

3

### A. Plaintiff's Claim Under the Missouri Constitution

As noted earlier, Count I is purportedly based on both the United States and Missouri Constitutions. Defendants argue that Count I should be dismissed to the extent that it is based on the Missouri Constitution because such a claim is not recognized under Missouri law. Plaintiff did not respond to this argument, and the Court agrees with Defendants. "No Missouri precedent exists permitting suits for monetary damages by private individuals resulting from violations of the Missouri Constitution." *Collins-Camden P'ship, L.P. v. County of Jefferson,* 425 S.W.3d 210, 214 (Mo. Ct. App. 2014); *see also Moody v. Hicks,* 956 S.W.2d 398, 402 (Mo. Ct. App. 1997). Accordingly, Count I is dismissed to the extent that it asserts that Defendants are liable for violating the Missouri Constitution.

### B. Plaintiff's Claim Under the United States Constitution

Defendants have combined their arguments regarding (1) whether Plaintiff has stated a claim and (2) their entitlement to qualified immunity. They contend that Plaintiff has failed to state a claim because his termination was justified under the balancing test dictated by *Pickering v. Board of Educ.,* 391 U.S. 563 (1968). They alternatively argue that even if Plaintiff's termination was not justified, they are entitled to qualified immunity because under the *Pickering* analysis the wrongfulness of an employee's termination is rarely clearly established. Plaintiff contends that the *Pickering* analysis only comes into play if there is evidence of disruption (or at least the threat of disruption), and the Complaint does not allege that there was any disruption in MSPD's operations as a result of his comments. The Court agrees with Plaintiff.

Defendants do not dispute that a public employee's right to speak on matters of public concern without repercussions is, at least in some circumstances, clearly established. *See Garcetti v. Ceballos,* 547 U.S. 410, 417 (2006) (citing cases). Defendants also do not contend

4

that Plaintiff failed to allege the elements of his claim. Instead, they invoke the so-called "*Pickering* defense" and contend that (1) Plaintiff's termination was justified under *Pickering*, and (2) even if it was not justified they are entitled to qualified immunity because the *Pickering* analysis is so fact-intensive that it could not have been clearly established that Plaintiff's termination was not justified. The Court concludes that Defendants' *Pickering* arguments cannot be considered on the current Record and thus are premature.

*Pickering* requires a court to "balance 'the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Anzaldua v. Northeast Ambulance & Fire Prot. Dist.,* 793 F.3d 822, 832 (8th Cir. 2015) (quoting *Pickering,* 391 U.S. at 568); *see also Garcetti,* 547 U.S. at 418. However, before reaching the *Pickering* balancing test, two inquiries must be made. First, it must be determined whether Plaintiff has sufficiently pleaded that he spoke as a citizen on matters of public concern. If the answer is 'yes,' then there is a possibility of a First Amendment violation. *E.g., Garcetti,* 547 U.S. at 418; *Anzaldua,* 793 F.3d at 832-33 (8th Cir. 2015). For purposes of their motion Defendants explicitly state that they have "assumed that Plaintiff Bailey was speaking as a citizen in matters of public concern." (Doc. 11, p. 3.)[2]

Accepting that there is a possibility of a First Amendment violation, the second inquiry is whether any evidence indicates that the employee's speech had an adverse effect on the employer's operations. *E.g., Anzaludua,* 793 F.3d at 833; *Hemminghaus v. Missouri,* 756 F.3d 1100, 1111 (8th Cir. 2014). "'Where there is no evidence of disruption, resort to the *Pickering*

---

[2] In their Reply Suggestions, Defendants changed their position to contend that portions of Plaintiff's response to the Motion to Dismiss demonstrate that Plaintiff was not speaking as a citizen on matters of public concern. (Doc. 17, pp. 1-3.) The Court does not ordinarily consider arguments presented for the first time in reply suggestions, so the Court does not consider the issue in this Order. Plaintiff's Motion to Strike, (Doc. 19), is moot.

5

factors is unnecessary because there are no government interests in efficiency to weigh against First Amendment interests.'" *Hemminghaus,* 756 F.3d at 111 (quoting *Belk v. City of Eldon,* 228 F.3d 872, 881 (8th Cir. 2000)); *see also Washington v. Normandy Fire Protection Dist.,* 272 F.3d 522, 526 (8th Cir. 2001). As stated earlier, the Court is currently limited to considering the allegations in the Complaint and it must construe those allegations in the light most favorable to Plaintiff. Here, the Complaint alleges facts to support the elements of Plaintiff's claim, but it contains no allegations that demonstrate disruption in the MSPD's office. Therefore, the Complaint does not allege the facts necessary to justify a *Pickering* analysis.

Defendants argue that they are not required to present evidence of an actual disruption, and that they instead can make a reasonable prediction of disruption instead of waiting for an actual disruption to occur. (Doc. 11, p. 4.) However, even if Defendants were not required to wait until an actual disruption occurred before taking action, they still must present *evidence* that they acted based on a reasonable prediction of future disruption in order to create the need for a *Pickering* analysis. This point is confirmed by the cases cited by Defendants.

In *Hemminghaus*, the Eighth Circuit held that there was no need for an employer to wait for the workplace to be disrupted before acting, that "evidence of actual disruption . . . is not required in all cases," and that courts "consistently give[ ] greater deference to government predictions of harm used to justify restriction of employee speech than to predictions of harm used to justify restrictions on the speech of the public at large." *Hemminghaus,* 756 F.3d at 1112 (quotation omitted). The Court of Appeals noted that the Record not only established that there was a concern about potential disruption, but it also emphasized evidence establishing that disruption actually occurred. *Id.* at 1112-13. Importantly, the Court of Appeals did not rely on

6

its own prediction as to whether disruption was likely; it relied on evidence in the Record establishing that the decisionmakers actually harbored such concerns.

Similarly, in *Analdua,* the Eighth Circuit cited *Hemminghaus* for the proposition that a public employer need not always wait for the office to be disrupted before taking action. 793 F.3d at 833-34. But again, the evidentiary record established that the decision to terminate plaintiff was prompted by concerns about the effect plaintiff's speech would have on the workplace. 793 F.3d at 829-30. Further, the *Anzaldua* court made clear that evidence was needed, stating that "[i]f the employer shows a sufficient adverse impact, then we proceed to the *Pickering* balancing test. If it does not, then the qualified immunity defense must fail." *Id.* at 833.

In *Germann v. City of Kansas City,* 776 F.2d 761 (8th Cir. 1985), a judgment was entered in favor of the defendant after a bench trial. During the trial the district court heard evidence that the plaintiff's loyalty to the fire chief was put in doubt by the plaintiff's statements, that the fire chief "believed that discipline, morale and efficiency, and efficiency in the fire department depended upon respect being shown to rank," and that the fire chief "relied on management employees [such as the plaintiff] to implement his policies on a day-to-day basis in the field." 776 F.2d at 763. And in *Bartlett v. Fisher,* 972 F.2d 911 (8th Cir. 1992), the "defendants placed the *Pickering* balancing test squarely at issue *by presenting evidence* that Bartlett's letter to the Governor had an adverse impact on the Patrol." 972 F.2d at 917 (emphasis supplied).[3]

The Court further observes that it has not found a case in which the *Pickering* defense was resolved on motion to dismiss, without evidentiary support. In fact, the Court of Appeals

---

[3] Other cases not cited by Defendants have similarly relied on evidence demonstrating the employer's concerns about disruption. *E.g., Gunter v. Morrison,* 497 F.3d 878, 873 (8th Cir. 2007); *Lindsey v. City of Orrick,* 491 F.3d 892, 900-01 (8th Cir. 2007).

7

has stated that the *Pickering* defense "can rarely, if ever, be determined on a Rule 12(b)(6) motion to dismiss the public employee's complaint." *Lyons v. Vaught,* 781 F.3d 958, 961 n.1 (8th Cir. 2015). Plaintiff cites *Kruger v. Nebraska,* 820 F.3d 295 (8th Cir. 2016) for the proposition that dismissal is appropriate, (Doc. 11, p. 8), but that case is readily distinguishable on variety of grounds. *Kruger* did not involve the *Pickering* defense; in fact, it did not even involve the First Amendment. The case held that a duty not to release a "known and violent criminal" from prison was not clearly established, 820 F.3d at 302, which is a purely legal inquiry that did not require the development of any facts.

Here, Defendants have not presented any evidence (and they cannot under Rule 12(b)(6)). Instead, they point to the circumstances of Plaintiff's speech, including the language employed, to contend that Defendant's speech "sow[ed] discord among employees and undermin[ed] clients' confidence in [MSPD's] ability to provide adequate services." (Doc. 11, p. 5.) This could be true. On the other hand, it might not be. Unlike the cases cited above, Defendants present no evidence establishing that discord among employees and a loss of client confidence occurred, or that Defendants believed that it would. Defendants' argument is similar to one rejected by the Eighth Circuit in *Washington*:

> The directors contend that no showing of actual disruption is necessary, pointing to our statement that the potential for disruption is accorded particular weight "[w]hen lives may be at stake in a fire [and] an *esprit de corps* is essential to the success of the joint endeavor." *Shands [v. City of Kennett,* 993 F.2d 1337, 1344-45 (8th Cir. 1993)]. True enough, but we went on in *Shands* to point out that the fire chief in that case reasonably believed that the speech in question had led or would lead to disruption within the department, a showing that is absent in this case.

8

*Washington,* 272 F.3d at 527.[4] Thus, it is not enough for Defendants to simply argue that disruption could or did occur. The issue is one of fact, not law, so they must support their theory with evidence.

Defendants have only presented counsel's contention that disruption could have resulted from Plaintiff's speech. However, there is no evidence that Defendants harbored such beliefs, or that these beliefs prompted Plaintiff's termination. Without such evidence the Court does not reach the *Pickering* analysis. *E.g., Hemminghaus,* 756 F.3d at 111; *Washington*, 272 F.3d at 522. As a result, the Court must reject (for now) Defendants' arguments that (1) Plaintiff has failed to state a claim or that (2) under the *Pickering* analysis they would be entitled to qualified immunity.

### C. Plaintiff's Claim for Return of Property

Defendants contend that Plaintiff's claim for return of his property should be dismissed because (1) Plaintiff "has not identified any authority that would entitle him to such material," and (2) anything he created as an attorney for MSPD is confidential information that cannot be given to him pursuant to Rule 4-1.6 of the Missouri Rules of Professional Conduct. (Doc. 11, p. 9.) Plaintiff points out that Count II seeks return of "his personal property," which would not be governed by Rule 4-1.6. (Doc. 16, p. 8.)

The Court agrees with Plaintiff. Plaintiff's legal entitlement to his own personal property requires no citation to authority. The parties may dispute whether Defendants have any of Plaintiff's property, but this is a factual dispute that does not justify dismissing Count II.

---

[4] In *Shands*, (the case referenced in *Washington*), the Record included evidence that the Fire Chief "determin[ed] that the four firemen's speech had caused or would cause dissension and disruption . . . ." *Shands,* 993 F.2d at 1345.

9

## III.  CONCLUSION

For the reasons stated above, the Court dismisses Plaintiff's claim that his rights under the Missouri Constitution were violated.  The Motion to Dismiss is denied in all other respects.

**IT IS SO ORDERED.**


DATE: May 2, 2018

/s/ Beth Phillips
BETH PHILLIPS, JUDGE
UNITED STATES DISTRICT COURT